IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

**DEBORAH KAY CLINE,**

    **Plaintiff,**

v.                                    Civil Action No. 5:14-cv-24083

**CAROLYN W. COLVIN, Commissioner**
**Social Security Administration,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before this Court is Plaintiff's Brief in Support of the Motion for Summary Judgment (ECF No. 12) and the Brief in Support of Defendant's Decision (ECF No. 13).

This is an action seeking review of the Notice of Appeals Council Action, denying the Claimant's request for review of the Administrative Law Judge's (ALJ) decision dated April 25, 2013. Deborah Kay Cline, Claimant, applied for widow's disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.[1] This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] A widow or widower of a person who worked long enough under Social Security, can:
- Receive full benefits at full retirement age for survivors or reduced benefits as early as age 60.
- Begin receiving benefits as early as age 50 if you are disabled and the disability started before or within seven years of the worker's death.
- Receive survivor's benefits at an age if you take care of the deceased worker's child who is under age 16 or is disabled and receives benefits on the worker's record.

1

Background

Deborah Kay Cline, Claimant, applied for disabled widow's benefits on August 3, 2011. Claimant alleged disability onset of January 15, 2009.[2] Her claim was denied initially on November 18, 2011, and upon reconsideration on January 30, 2012. Claimant filed a request for hearing on February 29, 2012. On April 8, 2013, the ALJ held a video hearing where Claimant appeared in Bluefield, West Virginia, and the ALJ presided over the hearing from Roanoke, Virginia. The ALJ denied Claimant's application for disability benefits on April 25, 2013 (Tr. at 28). On May 15, 2013, Claimant filed a Request for Review of Hearing Decision/Order (Tr. at 16). The Appeals Council received additional evidence submitted by Claimant which was made part of the record as Exhibit B21F (Tr. at 6). The Notice of Appeals Council Action dated June 14, 2015, stated "We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review" (Tr. at 1-4).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the

---

[2] Claimant is the widow of a deceased worker, she has attained the age of 50, is unmarried and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the individual attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was also entitled to survivor's benefits, whichever is later. Claimant's prescribed period began on July 13, 2006, the date she was last entitled to survivor's benefits. Therefore, Claimant must establish that her disability began on or before July 31, 2013, in order to be entitled to a disabled widow's benefits.

adjudication of disability claims. 20 C.F.R. § 404.1520 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ found that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date, January 15, 2009 (Tr. at 22). Under the second inquiry, the ALJ found that Claimant

suffers from the severe impairments of arthropathies including cervical and lumbar spine strains, osteoarthritis, overactive bladder, hypertension and anxiety. At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23). The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations[3] (Tr. at 24). The ALJ found that Claimant has no past relevant work experience (Tr. at 26). Nevertheless, the ALJ concluded that Claimant could perform jobs such as non-postal mail clerk, order clerk and retail sales clerk, which exist in significant numbers in the national economy (Tr. at 27). On this basis, benefits were denied (Tr. at 26-27.)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456

---

[3] Claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She could stand/walk 6 hours in an 8-houw workday and sit about 6 hours in an 8-hour workday. She could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. She could never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme cold, vibration and hazards []. Her mental impairments were found non-severe (Exhibit B14F). Upon reconsideration, both the physical and mental determinations were affirmed (Exhibit B14F). The undersigned gives greater weight to the medical consultant as it is most consistent with the medical evidence as a whole. Although the State agency psychological consultant opined the claimant's conditions are non-severed, the ALJ found that these conditions are severe due to the fact the claimant is on medications and gets treatment consistently (Tr. at 26).

(4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on July 6, 1959. Claimant did not finish high school but did get her GED (Tr. at 38). Claimant is the widow of the deceased worker. Her husband received black lung benefits (Tr. at 39). She is currently not married. Claimant does not have past work experience. Claimant does not have a vehicle, her sister-in-law and nephew takes her to the grocery store.

## The Medical Record

On March 6, 2008, Claimant was seen at Southern Highlands Community Mental Health Center (Tr. at 249). Claimant was reported as being dysphoric and fatigues with decreased interest and, as found on the mental status examination, poor recent memory. (*Id.*) Claimant was given a trial of Wellbutrin. On November 24, 2008, Claimant reported having pain and stiffness in the left elbow and arthralgias in the low back (Tr. at 300). The overall assessment included unspecified essential hypertension, unspecified hyperlipidemia, overactive bladder, unspecified arthropathy, and allergic sinus headache (Tr. at 301). On February 16, 2009, Claimant indicated she had lost her insurance (Tr. at 308). Due to this loss, she was unable to fill the medication for her hypertension, which was noted as being uncontrolled and being unable to return to her urologist for the

overactive bladder.

On May 22, 2009, Claimant was described as being tired and worried due to her mother having pneumonia (Tr. at 267). On October 16, 2009, Claimant was reported as being unhappy and grieving due to the death of her mother (Tr. 273). Claimant was noted as continuing to grieve on November 23, 2009 (Tr. at 273-275).

On February 15, 2010, Claimant was noted as having "very flat affect" with obvious psychopathology (Tr. at 345). Active problems included unspecified essential hypertension, unspecified arthropathy, unspecified hyperlipidemia, overactive bladder, depression and allergic rhinitis (Tr. at 343).Claimant indicated having more anxiety and dysphoria on April 5, 2010 (Tr. 280). Because her deceased husband's black lung benefits were withdrawn 6 months prior, she could not get her anxiety medicine because she had no other income. (Tr. at 280). Claimant was given a trial of Valium (Tr. at 280-281). On June 11, 2010, Claimant was described by the Southern Highlands Community Mental Health Center as being subdued and the Valium was continued (Tr. at 282). Low back pain, chest pain, abdominal pain and episodic pain in other joints were reported on June 11, 2010 (Tr. at 349).

At the request of the Disability Determination Service [hereinafter "DDS"] on January 15, 2011, Paula J. Bickham, PhD, reviewed information provided by DDS and opined to Claimant's medical condition (Tr. at 358). Dr. Bickham completed a Psychiatric Review Technique form and indicated there was insufficient evidence to render an opinion (Tr. 358).

Also, at the request of DDS, Cindy Osborne, D.O., on February 11, 2011 reviewed Claimant's information and was asked to render an opinion concerning physical

conditions and limitations (Tr. at 372-379). Dr. Osburne determined there was insufficient evidence to assess the claim (Tr. at 379).

Claimant returned to Tug River Health on February 14, 2011 and reported having low back discomfort which was described as being chronic (Tr. at 420). Based on the reported pain, a lumbar spine x-ray was performed (Tr. at 424). The Clinical Information reported Claimant's chief complaint as low back pain. This imaging study revealed degenerative changes with disc space narrowing at L4-5 and L5-S1. (*Id.*)

Claimant continued to maintain regular treatment through Southern Highlands from August 5, 2010 through August 5, 2011 (Tr. at 430-437). Over the span of a year, Southern Highlands reported that Claimant was doing well and stable on medications.

On November 2, 2011, Claimant attended a consultative examination, at the request of DDS, with Tri-State Occupational Medicine, Inc., Stephen Nutter M.D. (Tr. at 465-472). Claimant reported her back pain being constant and radiating down her right leg (Tr. at 465). Claimant described her neck pain and being intermittent but not radiating. (*Id.*) On physical examination, "some" pain and tenderness was noted along the left thumb and "some" pain was noted in both knees on range of motion testing (Tr. at 467). Claimant also complained of pain with range of motion testing of the lumbar spine (Tr. at 468). The examiner's impression was of chronic cervical and lumbar strain without evidence of radiculopathy and osteoarthritis. (*Id.*) During this examination, x-rays were taken of the lumbar spine and right knee (Tr. 470). The right knee was found to have mild degenerative arthrosis and the lumbar spine was found to have mild narrowing at L5 - S1. (*Id.*)

On November 15, 2011, Claimant's attended another consultative examination,

again at the request of DDs, with Elizabeth Bodkin M.A. (Tr. at 473-477). The assessments completed were a mental status examination and a clinical review. The examiner indicated review of Social Security forms SSA-3368 and SSA-3373, along with a report on June 15, 2007, and a treatment note from Southern Highlands dated August 15, 2011 (Tr. at 474). The examiner also obtained past and current information from Claimant (Tr. 474-475). The concluding diagnoses were given as Major Depressive Disorder, Recurrent, Moderate and Anxiety Disorder NOS (Tr. at 475). The examiner determined Claimant's social functioning, persistence and pace to be within normal limits (Tr. at 476).

Amy Wirts, M.D. reviewed Claimant's information and completed a Physical Residual Functional Capacity Assessment on November 14, 2011 at the request of DDS (Tr. 478-485). Dr. Wirts opined to Claimant retaining the capacity to lift twenty pounds occasionally, lift ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday (Tr. at 479). Further limitations included never climbing of ladders/ropes/scaffolds and occasionally climbing ramp/stairs, balancing, stooping, kneeling, crouching, and crawling (Tr. at 480). Other limitations were that Claimant should avoid concentrated exposure to extreme cold, vibration, and hazards (Tr. at 482).

On November 18, 2011, at the request of DDS, Holly Cloonan, Ph.D., reviewed Claimant's information and completed a Psychiatric Review Technique Form (Tr. at 486-499). Dr. Cloonan opined Claimant did have a severe mental impairment and only had mild limitations in the areas of daily living, maintaining social functioning, and maintaining concentration, persistence or pace (Tr. at 496).

Claimant returned to Southern Highlands on December 5, 2011 and January 3, 2012 for follow up and reported doing well on medications (Tr. at 502-503). Poor recent memory was again noted on the mental status evaluation at both visits. (*Id.*) Claimant returned to Tug River Health Association on February 13, 2012, for a follow-up of hypertension, hyperlipidemia, over active bladder, and low back pain (Tr. at 515). During this visit, low back pain, arthritis pain in the hands, and joint pain were noted (Tr. at 516). On physical examination, Claimant's hands were found to have some changes in the PIP joints, some stiffness was noted on moving from lying to sitting position, and obvious musculoskeletal abnormalities were found (Tr. at 517).

On March 6, 2013, Claimant returned to Tug River Health Association and requested Sandra Estep, FNP, to complete paperwork for her SSI claim (Tr. at 533). Following review of Claimant's x-ray from 2011, Ms. Estep did provide the requested paperwork (Tr. 510-513, 533). The paperwork complete was a physical and a mental Medical Assessment of Ability to do Work-Related Activities Form (Tr. at 510-513). Ms. Estep opined to Claimant as being physically limited to lifting no more than fifteen pounds occasionally, lifting five pounds frequently, standing for a total of four hours out of an eight-hour workday, and only being capable of occasionally climbing, stooping, kneeling, crouching, and crawling (Tr. at 510-511).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to properly evaluate the treating source opinion of Sandra Estep, FNP, a family nurse practitioner from the Tug River Health Association (ECF No. 12). Additionally, Claimant asserts that the ALJ failed to properly evaluate her allegations of limitations and pain. Claimant avers that the ALJ failed to

address Claimant's alleged severe limitations in the areas of pain/standing/walking, use of the left hand and memory. (*Id.*)

Defendant asserts that the ALJ appropriately afforded only some weight to the opinion of family nurse practitioner (Nurse Estep) because it was not consistent with the record as a whole. Further, Defendant asserts that substantial evidence supports the Commissioner's final decision that Claimant could perform a significant number of unskilled, light jobs in the national economy and, therefore, was not disabled under the Social Security Act (ECF No. 13).

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the ALJ's failed to perform a pain and credibility analysis.

## Discussion

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. § 404.1529(b) (2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also*, *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. *Craig*, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered

and considered, but the absence of such evidence is not determinative. *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4) (2014). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2014).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to

> produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

*Craig* and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. *Craig*, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be

rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. *Craig*, 76 F.3d at 595. Nevertheless, *Craig* does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain *solely* because the pain itself is not supported by objective medical evidence.

In addressing Claimant's alleged symptoms, the ALJ states "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" (Tr. at 24). However, upon a close review of the entire decision, the ALJ fails to include the reasons that he is claiming to have considered and explained.

Although the ALJ listed Claimant's testimony relating to intensity, persistence and limiting effects of these symptoms, the ALJ's decision does not analyze the evidence of record related to these factors. The ALJ ultimately concluded that Claimant was not entirely credible. The ALJ's failure to discuss Claimant's subjective complaints in the context of the factors listed compels the court to recommend remand.

The court declines to address the remaining arguments raised by Claimant in light of the recommendation of remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY Plaintiff's Brief in Support of the Motion for Summary Judgment, AFFIRM the Commissioner's Brief in Support of Defendant's

Decision, REVERSE the final decision of the Commissioner, REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 3, 2015.

_____
Dwane L. Tinsley
United States Magistrate Judge